Opinion issued December 15, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00863-CV

———————————

Veronica Viera and maria estrada, Appellants

V.

Little
Caesar Enterprises, INC., D/B/A Little Caesar’s Pizza, Appellee



 



 

On Appeal from the 164th District Court 

Harris County, Texas



Trial Court Case No. 0855128

 



 

MEMORANDUM OPINION

In this
premises liability case, Veronica Viera and Maria Estrada appeal a summary
judgment granted in favor of Little Caesar Enterprises, Inc., d/b/a Little
Caesar’s Pizza. Viera and Estrada were in a Little Caesar’s restaurant when an
armed robbery was committed.  One of the
robbers shot Viera after she and Estrada exited through the back door of the pizzeria,
and Estrada witnessed the shooting. They sued for negligent security. Little
Caesar’s moved for traditional and no-evidence summary judgment on several
grounds, including that the armed robbery that injured Viera and Estrada was not
sufficiently foreseeable to impose a legal duty on Little Caesar to protect them
against third-party criminal acts. The trial court granted summary judgment in
favor of Little Caesar’s. Viera and Estrada appealed. We hold that the risk of
the armed robbery that resulted in Viera and Estrada’s injuries was not
sufficiently foreseeable to impose a duty on Little Caesar’s. We affirm the
trial court’s judgment on this ground and do not reach the other grounds upon
which the trial court may have granted summary judgment.[1]

Factual Background

On a summer evening
in 2008, two sisters, Veronica Viera and Maria Estrada, entered the Little
Caesar’s pizzeria in their neighborhood to pick up pizza they had ordered. Two masked
men entered the pizzeria through the rear door, brandished guns, threatened the
patrons, and told everyone to get on the floor. According to Estrada, the
robbers were wearing Little Caesar’s uniforms. The incident report indicates
that the robbers took two shots at the store manager, missing him both times,
and the manager gave them the money in the cash register. The gunmen then ordered
everyone to the back of the restaurant. 

According to
witnesses, the gunmen instructed the customers to “run.” A number of customers,
including the two sisters, fled through the open back door and down a fenced
alley behind the pizzeria. Estrada exited the building ahead of Viera. When she
looked back, she saw one of the gunmen come out the back door of the building
and take three shots in the direction of Viera. Viera
sustained two gunshot wounds as she fled. 

The police investigation
determined that the incident “appeared to have been an inside job” conducted
with the assistance of a restaurant employee, who appeared to have opened, or
left open, the back door through which the robbers entered the building. 

Procedural Background

A few months after
the incident, Viera and Estrada sued Little Caesar’s. Viera and Estrada claimed
that Little Caesar’s was negligent in failing to provide adequate security and
that it was foreseeable that an “assault” might occur on the premises.  In addition to Viera’s
personal injuries suffered from the shooting, they sought mental anguish
damages, including damages for post-traumatic stress disorder. 

Little Caesar’s moved
for traditional and no-evidence summary judgment on the grounds that: (1) the
shooting occurred outside of the Little Caesar’s, on property neither owned nor
operated by Little Caesar’s; (2) there was no evidence that Little Caesar’s
owed a duty to Viera and Estrada; (3) there was no evidence of causation; (4)
there was no evidence that the armed robbery was foreseeable; and (5) in the
alternative, Viera and Estrada’s claims were barred by the statute of
limitations. Viera and Estrada filed a response, to which they attached
affidavits from Viera, Estrada, Dr. Edward Charlesworth,
and Thomas Swanson, a security consultant.[2]
The trial court granted summary judgment in favor of Little Caesar’s without
specifying the basis for its judgment.

Standard of Review 

We review a trial court’s summary judgment de novo. Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court
grants summary judgment without specifying the grounds for granting the motion,
we must uphold the trial court’s judgment if any of the
grounds are meritorious. Beverick v. Koch Power, Inc., 186 S.W.3d 145,
148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The motion must state the specific
grounds relied upon for summary judgment. See
Tex. R. Civ. P. 166a(c), (i); Timpte Indus., Inc. v. Gish, 286 S.W.3d 306,
310 (Tex. 2009). When reviewing a
summary judgment motion, we must (1) take as true all evidence favorable to the
nonmovant and (2) indulge every reasonable inference and resolve any doubts in
the nonmovant’s favor. Valence
Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215
(Tex. 2003).  

A party seeking summary judgment may combine in a single motion a request
for summary judgment under the no-evidence standard with a request under the
traditional standard. Binur v. Jacobo, 135 S.W.3d 646, 650 (Tex.
2004). To prevail on a no-evidence motion for summary judgment, the
movant must establish that there is no evidence to support an essential element
of the nonmovant’s claim on which the nonmovant would
have the burden of proof at trial. See Tex. R. Civ. P. 166a(i); Hahn v. Love,
321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The
burden then shifts to the nonmovant to present evidence raising a genuine issue
of material fact as to each of the elements specified in the motion. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006); Hahn, 321 S.W.3d at 524.

In a traditional summary judgment
motion, the movant has
the burden to show that no genuine issue of material fact exists and that the
trial court should grant judgment as a matter of law. Tex. R. Civ. P.
166a(c); KPMG Peat Marwick v. Harrison Cnty.
Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex.
1999).  A defendant
moving for traditional summary judgment must conclusively negate at least one essential
element of each of the plaintiff’s causes of action or conclusively establish
each element of an affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  

Premises
Liability Claims

          Little Caesar’s contends that it did
not owe a duty to protect or warn Viera and Estrada against the possibility of
an armed robbery because it was not a foreseeable danger. Viera and Estrada
counter that they presented evidence of prior criminal activity in and around
Little Caesar’s premises that rendered the armed robbery in which they were
injured foreseeable. 

A.      Duty to Protect Invitees from Foreseeable Third-Party
Criminal Acts

Viera
and Estrada’s claims against Little Caesar’s based on its failure to provide
adequate security are premises liability claims.[3] See Timberwalk Apts. Partners, Inc. v. Cain, 972 S.W.2d 749, 753 (Tex. 1998) (noting
that claim that landowner failed to provide adequate security against criminal
conduct by third parties is ordinarily premises defect claim); Mayer v. Willowbrook
Plaza Ltd. P’ship, 278 S.W.3d 901, 909 (Tex. App.—Houston [14th Dist.] 2009,
no pet.) (same). To prevail on their
premises liability claims, Viera and Estrada must establish that Little
Caesar’s owed a duty to warn or protect them against the armed robbery. Timberwalk, 972 S.W.2d at 756; Trammell
Crow Cent. Tex., Ltd. v. Gutierrez, 267 S.W.3d 9, 12 (Tex. 2008). The existence of a
duty is a question of law for the court to decide from the facts surrounding
the occurrence in question, including “the risk, foreseeability, and likelihood of injury, and the
consequences of placing the burden on the defendant.”  Gen. Elec. Co. v. Moritz, 257 S.W.3d 211, 218 (Tex. 2008). 

Generally, a person
has no legal duty to protect others from the criminal acts of third parties. Trammel Crow, 267 S.W.3d
at 12; Timberwalk,
972 S.W.2d at 756; Walker v. Harris,
924 S.W.2d 375, 377 (Tex. 1996). There is, however, an exception to this
rule: an owner or operator of premises has a duty to use ordinary care to
protect invitees from criminal acts of third parties if it knows or has reason
to know of an unreasonable and foreseeable risk of harm to the invitee. Trammel Crow, 267
S.W.3d at 12; Timberwalk,
972 S.W.2d at 756. It is undisputed that Viera and Estrada were invitees of
Little Caesar’s. But Little Caesar’s disputes that the danger that harmed them—the
armed robbery—was foreseeable under the circumstances. Unless the risk that
Viera and Estrada would be harmed by criminal conduct was so great that it was
both unreasonable and foreseeable, Little Caesar’s did not owe them a duty. Timberwalk, 972 S.W.2d at 756.

“Crime may be visited
upon virtually anyone at any time or place,” but this alone does not make third
party criminal acts foreseeable. Timberwalk, 972 S.W.2d at 756 (quoting Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 56 (Tex. 1997) (Owen, J.,
concurring)). Instead, foreseeability is established through evidence of
“specific previous crimes on or near the premises.” Trammell Crow, 267 S.W.3d at 12 (quoting Timberwalk, 972 S.W.2d at 756,
which in turn quotes Walker, 924
S.W.2d at 377). In reviewing evidence of previous crimes, we consider five
parameters: proximity, publicity, recency, frequency,
and similarity.[4]  Trammell
Crow, 267 S.W.3d at 15; Timberwalk, 972 S.W.2d at 757.  These factors are considered together, and
the evidence must be weighed in light of all factors. Timberwalk, 972
S.W.2d at 759. Also, the evidence should not be viewed with the benefit
of hindsight, but rather, in light of what Little Caesar’s knew or should have
known before the armed robbery. Id. at 757.

B.      Evidence of Prior Criminal Acts

Viera and Estrada
rely on the affidavit of their expert, Swanson, to support their contention
that the shooting was foreseeable to Little Caesar’s. In his affidavit, Swanson
testified that Little Caesar’s had been in the leased premises for four years
at the time of the June 2008 armed robbery involving Viera and Estrada and that
a “similar” crime had occurred at that location less than six months earlier. Swanson
then asserts his opinion that the prior robbery is sufficient to impose a duty
on Little Caesar’s under Timberwalk.


The existence of a
legal duty is matter for the court, rather than an expert witness, to decide. See Pouncy-Pittman v. Pappadeaux Seafood Kitchen, No. 01-07-00575-CV, 2008 WL
2930183, at *6 (Tex. App.—Houston [1st Dist.] July 31, 2008, no
pet.) (mem. op.) (reviewing expert testimony about foreseeability of criminal
conduct and recognizing that “because the question of duty is a question of law
for the court, an expert cannot properly opine regarding the existence of a
duty.”) (citing Drennan
v. Cmty. Health Inv. Corp., 905 S.W.2d 811, 824
(Tex. App.—Amarillo 1995, writ denied)); see
also Boren v. Texoma
Med. Ctr., Inc., 258 S.W.3d 224, 228 n.3 (Tex. App.—Dallas 2008, no
pet.) (recognizing same principle). An expert’s
conclusory statement as to whether a duty existed is no evidence of such duty. See Pouncy-Pittman, 2008 WL 2930183, at *6; Boren, 258 S.W.3d at
228 n.3. Therefore, we review Viera and Estrada’s evidence to determine whether
the prior criminal activity evidenced therein demonstrates an unreasonable and
foreseeable risk to Little Caesar’s customers of which Little Caesar’s was or
should have been aware at the time of the incident in question. Timberwalk,
972 S.W.2d at 756.

Attached as an
exhibit to Swanson’s affidavit are records from the Houston Police Department.
In addition to documents relating to the armed robbery at issue here, the
police department records included records relating to five incidents.[5]
Of the five incidents in the police files, two events occurred in or near the
strip center in question but not on Little Caesar’s premises: in January 2008,
a fight broke out between two men at a washateria; in
May 2007, an armed man in a vehicle reportedly attempted to rob three
individuals walking down the sidewalk near the strip center. The remaining
three of the incidents occurred in or directly outside of Little Caesar’s: two
of these incidents took place in 2006 and one in 2007. On the morning of
September 3, 2006, one of Little Caesar’s employees exited the store with a bag
of money to be deposited at the bank. A man standing outside the store wrested
the bag from her arm and fled on foot. No weapons were used, but the
complainant indicated that her arm was injured when the man forcibly took the
bag from her. On December 5, 2006, one Little Caesar’s employee accused another
of stealing two bottles of coke. No weapons were used, and no injuries were
reported. On December 29, 2007, Little Caesar’s was robbed by a single, armed
man. No shots were fired, but the robber struck a Little Caesar’s employee on
the head with his gun.

C.      Application
of the Timberwalk
Factors

1.       Proximity 

Each of the five
incidents in the police records relied on by Viera and Estrada occurred near
the shopping center in which Little Caesar’s is located. Three of them occurred
inside or directly outside of the pizzeria.

2.       Publicity

There is no evidence
that any of the incidents received any publicity or that Little Caesar’s was
otherwise aware of the fight in the washateria or the
attempted robbery on the sidewalk near the shopping center. Presumably, Little
Caesar’s was aware of the three events that occurred inside or directly outside
of its premises, as Little Caesar’s employees were complainants in those
incidents.

3.       Recency and
Frequency

Although
separate factors, courts generally address recency
and frequency together. See Trammell Crow,
267 S.W.3d at 15. Within this analysis, courts often
look at such evidence as crime statistics for crime on or near the premises at
issue compared to the statistics for the city (or an area within the city) to
compare whether the odds of crime on the premises were so great as to make the
risk of crime more foreseeable.  See Trammell Crow, 267
S.W.3d at 15. “[N]o one ratio or odds calculation conclusively resolves
the frequency analysis,” but the calculations “serve as data points a court may
rely on in determining the frequency of a crime in a certain location.”  Id. at 16.

The record indicates
that the Little Caesar’s store was open seven days a week for at least ten
hours per day, and that Little Caesar’s had been open at that location for
approximately four years at the time of the robbery.  The evidence demonstrates three incidents of
criminal conduct—excluding the armed robbery involving Viera and Estrada—during
that four-year period. The most recent incident was in December 2007, approximately
six months prior to the crime at issue here. Viera and Estrada did not provide
the court with any crime statistics from the city or from the area surrounding
the restaurant.

4.       Similarity

Two of the three prior
criminal incidents at Little Caesar’s are largely dissimilar to the armed
robbery in which Viera and Estrada were involved. An employee allegedly
stealing two bottles of coke does not put a property owner on notice of a
danger of armed robbery. While the grabbing of the money bag from a Little
Caesar’s employee on the way to deposit money in the bank is similar to the
armed robbery in that it involved stealing cash from Little Caesar’s, it is
different in three key aspects: it occurred outside of the Little Caesar’s
property; it occurred during the day; and, most importantly, it did not involve
a weapon or any threat of deadly force. But the armed robbery in December of
2007 bears several significant similarities to the armed robbery involving
Viera and Estrada: both involved the use of guns, were aimed at stealing the
cash in the pizzeria’s cash register, and occurred at night, inside the Little
Caesar’s. In the previous robbery, however, no shots were fired, and the robber
seems to have focused exclusively on the employee working the cash register,
without threat to the pizzeria patrons. 

C.      Conclusion

There is no evidence
indicating that Little Caesar’s knew or should have known about the fight in
the washateria or the attempted robbery on the
sidewalk near the shopping center. See Timberwalk, 972 S.W.2d at 759 (“Previous similar incidents cannot make
future crime foreseeable if nobody knows or should have known that those
incidents occurred. Property owners bear no duty to regularly inspect criminal
records to determine the risk of crime in the area. On the other hand, when the
occurrence of criminal activity is widely publicized, a landlord can be
expected to have knowledge of such crimes.”). Little Caesar’s
knew or should have known about the three incidents that occurred in or
directly outside of its property and involved its employees. But one of these
incidents—the coke bottles incident—is not sufficiently similar to the armed
robbery to be meaningful to this analysis. See
Timberwalk, 972 S.W.2d at 758 (stating that, although
the previous crimes need not be identical, they “must be sufficiently similar to the crime in question as to
place the landowner on notice of the specific danger.”).

Thus,
we focus on the two violent crimes of which Little Caesar’s knew or should have
known: (1) the unarmed robbery of the Little Caesar’s employee outside the
store when she was taking cash to the bank for deposit on the afternoon of September
3, 2006 and (2) the armed robbery of the Little Caesar’s on the evening of
December 29, 2007. Cf.
Trammel Crow, 267 S.W.3d at 13 (distinguishing 217 nonviolent crimes on
premises in past two years and focusing on 10 prior violent crimes). As
noted above, the unarmed robbery—which occurred during the day, outside the
Little Caesar’s, and was aimed exclusively at the Little Caesar’s employee who
carried money for deposit at the bank—bears little similarity to the armed
robbery in question, and it occurred nearly two years earlier. 

The
December robbery, however, is sufficiently similar to provide some support for
Viera and Estrada’s claim that the crime in question was foreseeable. Although
no shots were fired in the prior robbery, the fact that an armed man entered
Little Caesar’s and robbed the store in December 2007 makes it more plausible
that an armed robbery in which shots are fired could occur in the future. Cf. Timberwalk,
972 S.W.2d at 758. But the occurrence of only one
significantly similar event over a four-year period undermines Viera and Estrada’s foreseeability allegation. See Timberwalk,
972 S.W.2d at 758.

          Considering the five Timberwalk factors together, we conclude that
Little Caesar’s did not owe a duty to Viera and
Estrada. While “the difficulty
in assessing foreseeability lies in the inability to quantify how many prior
crimes make a particular attack predictable,”[6]
we conclude that one significantly similar event in which no shots were fired
and no person was injured is not sufficient. We particularly find instructive the Texas Supreme Court’s holding in Trammel Crow. There, the evidence
showed 227 criminal incidents on the premises within a two-year period, ten of
which were violent crimes.  Trammell Crow, 267
S.W.3d at 16. Three of the
violent crimes involved deadly weapons. Id.
The court observed, however, that a weapon had not been fired in any of
these crimes. Id. Additionally, three
of the robberies were perpetrated on businesses rather than individual patrons.
Id. at 17.
The other robberies were also distinguishable from the attack in which the Trammell Crow plaintiff was injured
because he had been shot at from a distance without any prior demand for money,
while the other injuries had generally resulted in connection with the victims’
resistance to relinquishing their property. The Texas Supreme Court concluded, “Nothing about the
previous robberies committed at the [premises] put [the landowner] on notice
that a patron would be murdered as part of a robbery on its premises.” Id. Thus, the plaintiff’s death was not
foreseeable, and the property owner had no duty to prevent the attack. Id.

          The analysis in Trammell Crow indicates that the attack in question here was also
not foreseeable. The evidence demonstrates only two prior robberies, unlike the
ten at issue in Trammell Crow, and
only one involved a deadly weapon, unlike the three involving a deadly weapon
in Trammell Crow. See id. at 16.
Like in Trammell Crow, there is no
evidence of a prior crime in which a gun was actually discharged nor of a serious injury in a prior crime. See id. Similarly, while an employee was
struck on the head in the December 2007 robbery while dealing with the robber’s
demand for money, Viera was shot at from a distance without any contemporaneous
demand for money. See id. at 17. Finally, while the other robberies were focused on
stealing Little Caesar’s money from Little Caesar’s employees, there were no
prior attacks on customers. See id.

We therefore conclude that it was not foreseeable to Little
Caesar’s that there was an unreasonable risk of the armed robbery that resulted
in injury to Viera and Estrada, and Little Caesar’s therefore had no duty to
protect Viera and Estrada against such an attack. See id.; Timberwalk,
972 S.W.2d at 756 (holding that “[t]he foreseeability of an unreasonable risk
of criminal conduct is a prerequisite to imposing a duty of care” on a premises
operator); see also Perez v. DNT Global
Star, L.L.C., 339 S.W.3d 692, 702–05 (Tex. App.—Houston [1st Dist.] 2011,
no pet.) (holding that jury could have concluded that plaintiff’s shooting was
not foreseeable to property owner when evidence showed five crimes on premises
in preceding two years, three of which were violent crimes, two of which
involved discharge of gun, but none of which involved injury from gun shots); Mayer,
278 S.W.3d at 919 (affirming summary judgment based on Timberwalk factors when evidence showed two violent crimes and one
potentially violent crime occurred at shopping center during sixteen months
preceding shooting of plaintiff in after-hours altercation); Ronk v. Parking Concepts of Tex., Inc., 711 S.W.2d 409, 418 (Tex. App.—Fort
Worth 1986, writ ref’d n.r.e) (holding plaintiff’s assault was not foreseeable
when evidence demonstrated ten prior incidents of theft on or near premises in
preceding two years, one assault, two burglaries, one unlawful carrying of a
weapon, and one criminal trespass); cf. Mellon Mortg. Co.
v. Holder, 5 S.W.3d 654, 657
(Tex. 1999) (holding some evidence of foreseeability of rape when evidence
showed 190 violent crime in two years prior to sexual assault—one violent crime
every four days). Because duty is a necessary element to Viera
and Estrada’s premises liability claims against Little Caesar’s, the trial
court correctly entered summary judgment on those claims in favor of Little Caesar’s.




 

Breach of Contract
Claim

According to the appellate record, Viera and Estrada’s live pleading is
their third amended petition,[7]
filed before Little Caesar’s original or amended motion for summary judgment.
In addition to Viera and Estrada’s premises liability claims, this pleading contains
a breach of contract claim against Little Caesar’s based on an alleged violation
of a Rule 11 agreement. Neither party addresses the breach of contract claim in
the motions for summary judgment, responses to motions for summary judgment, or
briefing on appeal. Nor does the trial court’s summary judgment award expressly
address the breach of contract claim. 

With the exception of certain statutorily-authorized interlocutory
appeals not at issue here,[8]
this Court has jurisdiction over judgments only if they are final and
appealable—i.e., only if they dispose of all claims between all parties. See Lehmann v. Har-Con
Corp., 39 S.W.3d 191,
191-204 (Tex. 2001); see also In re Daredia, 317 S.W.3d 247, 248–49 (Tex. 2010); In re Burlington Coat Factory Warehouse of
McAllen, Inc., 167 S.W.3d 827, 830 (Tex. 2005).  Neither party challenged jurisdiction over this
appeal, but we nonetheless ascertained that we had jurisdiction to hear this
case before proceeding to this opinion. Specifically, we had to determine
whether the trial court’s order actually granted summary judgment on the breach
of contract claim or whether that claim remained pending. We concluded that the
trial court’s judgment disposed of Viera and Estrada’s breach of contract
claim, whether or not the trial court so intended, and was therefore final and
appealable.[9] 

Generally, it is error for a trial court to grant summary
judgment on a claim that is not addressed in the summary judgment briefing. See Lehmann, 39 S.W.3d at 200 (observing
that, if defendant moves for summary judgment on less than all claims asserted,
but trial court renders judgment that plaintiff take nothing on all claims,
judgment is final but erroneous).  But
Viera and Estrada do not challenge the trial court’s judgment with respect to
their breach of contract claim. They have thus waived any error by the trial
court in granting summary judgment on the breach of contract claim, and we must
affirm the trial court’s judgment with respect to those claims. See Jacobs v. Satterwhite,
65 S.W.3d 653, 655–56 (Tex. 2001); see
also Harris v. Ebby
Halliday Real Estate, Inc., 345 S.W.3d
756, 759 (Tex. App.—El Paso 2011, no pet.) (affirming
summary judgment on breach of contract claim automatically when appellant had
negligence and breach of contract claims pending at time of summary judgment
and appellant appealed summary judgment in its entirety but did not raise issue
or argue error with respect to summary judgment on breach of contract claim). 

Conclusion

          We affirm
the trial court’s summary judgment in all respects. Because we affirm the trial
court’s summary judgment on Viera and Estrada’s tort claims on the ground that
Little Caesar’s did not owe Viere and Estrada a legal
duty, we do not reach the other grounds on which the trial court may have
granted summary judgment on those claims.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

 

Panel
consists of Justices Jennings, Sharp, and Brown. 

Sharp, J., dissenting. Dissent to follow.











[1]
          Viera
and Estrada also contend that the trial court erred in implicitly overruling
their objections to certain of Little Caesar’s evidence. Because we affirm the
trial court’s judgment on grounds not referable to that evidence, we need not
decide whether the trial court implicitly ruled on these objections or whether
the trial court erred in its implicit rulings, if any.

 





[2]
          They also attached an affidavit
from their former attorney, George Neely, relating to service of process
issues.





[3]
          Viera and Estrada have not
asserted any claims based on any alleged concurrent negligent activity on the
part of Little Caesar’s.





[4]
          A danger may also be foreseeable
to a premises owner or operator because of events that put the premises operator on notice of the specific danger
in question. See Del
Lago Partners, Inc. v. Smith,
307 S.W.3d 762, 768–69 (Tex. 2010).
In Del Lago,
the owner was put on notice of the risk of injury to customers from a bar fight
when the owner witnessed over an hour of verbal and physical hostility leading
up to the fight. Id.
at 769. No similar evidence was presented here.

 





[5]           The
police records also contain a service call inquiry indicating a phone
call on March 28, 2008 reporting an armed robbery at Little Caesar’s. But there
are no records relating to this event other than the service call inquiry. The
call was “cleared” three hours later and no incident report was created. Viera
and Estrada do not rely on this service call as evidence of prior criminal
activity in their briefing. We therefore will not, without invitation, infer
from this service call that a criminal act actually occurred, particularly in
light of the police department’s detailed records of other reported incidents—including
the theft of two bottles of coke. Cf. Maurer
v. 8539, Inc., No. 01-09-00709-CV, 2010 WL 5464160, at *4–5 (Tex. App.—Houston [1st
Dist.] Dec.
30, 2010, no pet.) (mem.
op.) (holding that service call logs that did not indicate whether incident
reports were made or whether any actual crimes similar to aggravated robbery in
question occurred were not probative of actual similar crimes). The evidence is
equally consistent with the possibility of an erroneous report, a “prank” call,
or a premeditated effort to determine police response time to a reported
robbery at the Little Caesar’s, as it is with the commission of a crime that was
reported to the police but “cleared” without investigation.

 





[6]           Trammell Crow, 267 S.W.3d at 18 (Jefferson, C.J.,
concurring).

 





[7]
          The record contains, as an
exhibit to an affidavit filed in support of a motion but not as an official
court filing, a fourth amended petition. There is no explanation as to why the
fourth amended petition is not included in the clerk’s record as the plaintiffs’
live pleading, but neither party asserts that it should be. Regardless, this
petition also contains a breach of contract claim. 

 





[8]
          Neither party has asserted any
basis for interlocutory jurisdiction over this case.

 





[9]           A
judgment that disposes of all claims and parties is final whether it so states
or not.  Lehmann, 39 S.W.3d at at
200.  Here, the trial court’s
order expressly states that it is final and dismisses all of Viera and
Estrada’s claims against Little Caesar’s and Pro Venture. These are the only
claims in the case demonstrated by the record. The judgment therefore expressly
disposes of all claims, including Viera and Estrada’s breach of contract claim.
It is thus a final judgment over which we have jurisdiction. See id.